UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| LINDA MARIE SMITH, | No. 2:08-cv-01485-MCE-GGH |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER |
| WINCO FOODS, LLC, | |
| Defendant. | |

Plaintiff initiated this action by which she seeks relief for her alleged wrongful termination. Defendant timely removed to this Court and subsequently filed the instant Motion for Summary Judgment. For the following reasons, Defendant's Motion is granted.[1]

///
///

---

[1] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefing. E.D. Cal. Local Rule 78-230(h).

1

## BACKGROUND[2]

Defendant, is an employee-owned grocery retailer. In 1999, Defendant hired Plaintiff as a cashier for one of its Idaho stores. Plaintiff transferred as a customer service representative to Defendant's Orangevale, California, store in February of 2006.

The two principal documents governing the terms and conditions of Plaintiff's employment with Defendant were the WinCo Foods #54 Hourly Employee Working Conditions and Wage Agreement ("Agreement") and the Company Personnel Policies, which were incorporated into the Agreement.

Pursuant to that Agreement, "Employees may be discharged without prior warning for gross misconduct, as defined in the WinCo Company Personnel Policies." Agreement, ¶ D. Those Personnel Policies define "gross misconduct" as, *inter alia*:

1. Dishonesty

2. Theft. Taking, obtaining or eating (except authorized employees tasting product for quality) any merchandise of any value without paying for it, regardless of any circumstances.

Personnel Police, § XV.

///
///
///
///

---

[2] The following undisputed facts are taken, for the most part verbatim, from Plaintiff's Statement of Disputed and Undisputed Facts in Opposition to Defendant's Motion for Summary Judgment.

1      Plaintiff was never advised that her employment with
2 Defendant would continue indefinitely, and she never saw anything
3 in writing that would lead her to conclude as much.  Rather,
4 Plaintiff claims a former company president stated to a group at
5 a holiday party in 1991 that "you could retire a millionaire if
6 you always do your job right."  Nevertheless, Plaintiff
7 acknowledges that everyone listening at the time, "just kind of
8 laughed," and she admits she was aware she could be fired
9 immediately if she failed to comply with Defendant's policies.
10      Pertinent to the instant action is Defendant's lost and
11 found policy, which states that all money or items found in WinCo
12 stores are WinCo property and that employees are not to benefit
13 from found items.  Plaintiff contends this policy was never
14 communicated to her, but she was terminated on May 19, 2007, as a
15 result of both her alleged violation of that policy and
16 dishonesty.
17      More specifically, at the time of Plaintiff's termination,
18 lost and found items were collected in a cupboard in the
19 Orangevale store's Customer Service Department.  The Orangevale
20 store manager, Tina Mullins, told Plaintiff that lost and found
21 items were customarily taken to the thrift store.  Plaintiff
22 offered to drop them off on her way home from work.  On the
23 relevant date, Smith was loading the lost and found items into a
24 bag to take to the thrift store when another employee noticed an
25 MP3 player and told Plaintiff she wanted it.  Plaintiff told the
26 employee that she was not allowed to take the item out of the
27 store without a receipt and then "sold" the item to that employee
28 for five cents.

3

1  In the meantime, the customer who had lost the MP3 player called
2  the store and advised personnel that he would return to collect
3  his property.
4       The next day, immediately upon Plaintiff's arrival at work,
5  Mullins inquired as to the location of the MP3 player.  Smith
6  responded that the MP3 player was in the bag, but then later
7  explained that she had sold it to a fellow employee.  Plaintiff
8  then apologized to Ms. Mullins for selling the property.
9  Ms. Mullins determined Plaintiff's conduct violated the lost and
10 found policy and that Plaintiff had been dishonest about her
11 actions.  Defendant ultimately terminated Plaintiff for gross
12 misconduct.
13      Plaintiff initiated the instant action in Sacramento
14 Superior Court alleging causes of action for breach of contract,
15 breach of the implied covenant of good faith and fair dealing,
16 and defamation.  Defendant subsequently removed the action to
17 this Court and filed the instant Motion for Summary Judgment.
18 Plaintiff concedes to the dismissal of her defamation cause of
19 action. Defendant contends Plaintiff's remaining claims fail
20 because, *inter alia*: 1) they are preempted by federal law and
21 2) Plaintiff has failed to produce any evidence of any implied
22 contract.  Defendant's Motion is now granted.
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

4

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense.  *See* Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim...may...move...for a summary judgment in the party's favor upon all or any part thereof."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992). The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. at 323(quoting Rule 56(c)).

///

1    If the moving party meets its initial responsibility, the
2 burden then shifts to the opposing party to establish that a
3 genuine issue as to any material fact actually does exist.
4 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
5 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.
6 253, 288-89 (1968).
7    In attempting to establish the existence of this factual
8 dispute, the opposing party must tender evidence of specific
9 facts in the form of affidavits, and/or admissible discovery
10 material, in support of its contention that the dispute exists.
11 Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that
12 the fact in contention is material, i.e., a fact that might
13 affect the outcome of the suit under the governing law, and that
14 the dispute is genuine, i.e., the evidence is such that a
15 reasonable jury could return a verdict for the nonmoving party.
16 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52
17 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper
18 Workers, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way,
19 "before the evidence is left to the jury, there is a preliminary
20 question for the judge, not whether there is literally no
21 evidence, but whether there is any upon which a jury could
22 properly proceed to find a verdict for the party producing it,
23 upon whom the onus of proof is imposed."  Anderson, 477 U.S. at
24 251 (quoting Schuylkill and Dauphin Improvement Co. v. Munson, 81
25 U.S. 442, 448 (1871)).
26 ///
27 ///
28 ///

6

As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts....Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

**1. Preemption**

Defendant argues Plaintiff's contract claims are preempted by the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, because they turn on an interpretation of the Agreement, which, Defendant's contend, constitutes a collective bargaining agreement.

///
///
///

7

1      "[S]ection 301 of the LMRA preempts all state-law causes of
2 action evaluation of which requires interpretation of a labor
3 contract's terms." Hayden v. Reickerd, 957 F.2d 1506, 1509 (9th
4 Cir. 1991) (internal citations and quotations omitted).  Thus,
5 "if [a Plaintiff's] claims are neither based upon [the]
6 collective bargaining agreement nor dependent upon an
7 interpretation of that agreement, section 301 does not preempt
8 them." Id.  "Notably, not every dispute...tangentially involving
9 a provision of a collective-bargaining agreement is preempted by
10 301.  Rather, a claim is preempted only if it *turns* on any
11 collective-bargaining agreement interpretation." Id. (internal
12 citations and quotations omitted) (emphasis in original).
13     Moreover, "any 'independent agreement of employment
14 [concerning a job position covered by the CBA] could be effective
15 only as part of the collective bargaining agreement.'" Beals v.
16 Kiewit Pacific Co., Inc., 114 F.3d 892, 894 (9th Cir. 1997)
17 (quoting Olguin v. Inspiration Consol. Copper Co., 740 F.2d 1468,
18 1474 (9th Cir. 1984)).  "'[T]o the extent that the [independent
19 agreement] is inconsistent with the provisions of the collection
20 [*sic*] bargaining agreement, the bargaining agreement controls.'"
21 Id. (quoting Olguin, 740 F.2d at 1474).
22     Accordingly, Defendant contends that the WinCo Foods #54
23 Hourly Employee Association ("Association") is a labor
24 organization responsible for negotiating the terms of the
25 Agreement, which consequently constitutes a collective bargaining
26 agreement.
27 ///
28 ///

8

1 "The term 'labor organization' means any organization of any
2 kind, or any agency or employee representation committee or plan,
3 in which employees participate and which exists for the purpose,
4 in whole or in part, of dealing with employers concerning
5 grievances, labor disputes, wages, rates of pay, hours of
6 employment, or conditions of work."  29 U.S.C. § 152(5).  Per the
7 express terms of the Agreement, "Winco recognizes WinCo Foods #54
8 Hourly Employee Association as the sole collective bargaining
9 representative of the employees at Store #54 in Orangevale,
10 California...for the purpose of establishing wages, hours and
11 conditions of employment for all such hourly, non-management
12 employees."  Agreement, ¶ A(1).  The document also provides for
13 extensive grievance procedures.  Id. at 20.  Based on the above
14 contract provisions, and in light of Plaintiff's utter failure to
15 produce any evidence to create a triable issue of fact to the
16 contrary, this Court holds that the Association responsible for
17 negotiating the relevant Agreement with Defendant is a "labor
18 organization."  See NLRB v. Cabot Carbon Co., 360 U.S. 203, 212-
19 14 (1959).
20     The Court also holds that the Agreement constitutes a
21 collective bargaining agreement, the interpretation of which is
22 critical to Plaintiff's state law claims.  Therefore, pursuant to
23 the above authorities, Plaintiff's claims are preempted as a
24 matter of law.
25     Plaintiff disputes the above logic via largely nonsensical,
26 irrelevant, and unsubstantiated arguments, such as: 1) the
27 Agreement is unenforceable because it contains an unconscionable
28 arbitration clause; and 2) the Agreement is a sham.

9

Nevertheless, Plaintiff fails to: 1) demonstrate how her first argument is relevant or 2) produce any evidence supporting her latter argument.  Accordingly, Plaintiff's contentions are rejected, and Defendant's Motion is granted.

### 2. The Merits

Even if Defendant's preemption defense was without merit, Plaintiff's claims are rejected on the merits.  Plaintiff does not assert that her termination violated the express terms of the Agreement.  To the contrary, according to Plaintiff, her termination violated some amorphous implied employment contract and implied covenant that she would be terminated only for good cause.  However, while Defendant has produced evidence that Plaintiff's employment was governed exclusively by the Agreement, Plaintiff has failed to produce any evidence tending to create a triable issue of fact as to the existence of any other contract or implied covenant.  Rather, she relies wholly on an alleged statement made at a social event that, "you could retire a millionaire if you always do your job right."  Nevertheless, she admits that she was aware she could be immediately terminated for violating Defendant's policies and that no one ever advised her that her employment would continue indefinitely. Tellingly, in Opposition to Defendant's instant Motion, her sole argument is that "[t]here is a bona fide factual dispute that Plaintiff's termination was for reasons other than good cause." Opposition, 9:24.  Accordingly, the Court finds no evidence of the existence of any implied agreement, and Defendant's Motion is granted.

10

**CONCLUSION**

For the reasons stated, Defendant's Motion for Summary Judgment (Docket No. 11) is GRANTED. The Clerk of the Court is directed to close the file.

IT IS SO ORDERED.

Dated: September 17, 2009

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE